IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICKY NALLY | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LIFE INSURANCE CORPORATION | : | NO.  07-0707 |
| OF NORTH AMERICA, *et al.*[1] | | |

# MEMORANDUM AND ORDER

**L. Felipe Restrepo**                                                                      **December 14, 2007**
**United States Magistrate Judge**

     Vicky Nally ("plaintiff") filed this action for accidental death benefits and attorney's fees

arising out of Life Insurance Company of North America's (hereinafter "LINA," "defendant")

denial of accidental death and dismemberment benefits for her husband, Dennis Nally, allegedly

in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*.

("ERISA").  Plaintiff and defendant filed cross-motions for summary judgment.  Oral argument

was held on November 2, 2007.  For the reasons set forth below, the Court will grant

Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

In addition, the Court will not award attorney's fees.

## 1.   BACKGROUND

     The facts in this case are undisputed.  (<u>See</u> Tr. Oral Arg., 11/2/07, 2-3.)  Plaintiff, Vicky

---

[1] Life Insurance Corporation of North America has been substituted for Cigna
Corporation *et al.* in this action.  <u>See</u> Stipulation and Order, 5/11/07 (Doc. No. 9).

Nally, is the administrator of the estate of Dennis Nally and the named beneficiary of an accidental death and dismemberment insurance policy ("Group Accident Policy") issued by defendant to Tyco, plaintiff's decedent's employer.  (Compl. ¶¶ 2, 3, 10; Ans. ¶¶ 2, 3, 10.)  Mr. Nally was an insulin dependent type I diabetic.  (Def.'s St. Mat. Facts ¶ 5; Pl.'s Res. Def.'s St. Mat. Facts ¶ 5; Rec. D0054, D01952.)  On the morning of December 5, 2005, while employed by Tyco, Mr. Nally was in a high-speed single-car rollover automobile accident on Route 283 in Dauphin County, Pennsylvania.  (Pl.'s Mot. Summ. J. ¶¶ 1-2, Def.'s St. Mat. Facts ¶ 6.)  On December 8, 2005 (three days later), he died of injuries sustained in the crash.  (Pl.'s St. Mat. Facts ¶ 2; Def.'s St. Mat. Facts ¶ 7.)

Witnesses driving near Mr. Nally before the crash reported that he was speeding and driving "all over the road."  (Def.'s St. Mat. Facts ¶ 10; Police Rep., D0149.)  Mr. Nally's vehicle traveled into the road's center median and rolled over several times before coming to rest on its roof.  (Pl.'s St. Mat. Facts ¶ 16; Police Rep., D1048.)  The vehicle's Crash Data Retreival system indicated that, in the five seconds prior to the crash, Mr. Nally had been driving up to ninety-two (92) miles per hour and did not apply the brakes.  (Def.'s St. Mat. Facts ¶ 13; Rec. D0124.)  Police did not find any evidence of  mechanical failure, adverse weather or road conditions, or drug or alcohol consumption.  (Police Rep., D0145-47.)

Emergency Medical Services ("EMS") technicians treated Mr. Nally at the scene.  (Pl.'s St. Mat. Facts ¶ 16; Def.'s St. Mat. Facts ¶ 15.)  The EMS technicians noted in their report that upon their arrival, Mr. Nally was "conscious and alert," but he was severely confined in his inverted vehicle with trapped limbs, so they could not perform a physical assessment until he was physically extracted forty-five (45) minutes later.  (Pl.'s St. Mat. Facts ¶ 16; Def.'s St. Mat. Facts

2

¶ 15a.; Rec. D0198, D0428-29.)  At some point during the extraction, Mr. Nally lost consciousness. (Pl.'s St. Mat. Facts ¶ 16; Rec. D0428-29.)  Once extracted, EMS found Mr. Nally severely hypoglycemic.  (Def.'s St. Mat. Facts ¶ 15; Rec. D0198.)  His blood sugar (glucose) level was recorded as "37 mg/dl via IV flash;" he was given an ampule of glucose by EMS "in the field without any major effect on his mental status."  (Id.)  Police recorded Mr. Nally's physical condition as "sick."  (Police Rep., D0145.)

Mr. Nally was transported to Lancaster General Hospital for further treatment for his injuries.  (Pl.'s St. Mat. Facts ¶¶ 17-25; Def.'s St. Mat. Facts ¶ 15.)  The "history and physical" taken by the Hospital on December 5, 2007 states, "The patient arrives with a Glascow Coma Scale of 7.  His blood sugar in the field was found to be 34 … [he is] post motor vehicle collision with possible traumatic brain injury.  His CT scan of his head is negative, and his mental status may be due in part to his low blood sugar."  (Def.'s St. Mat. Facts ¶¶ 15a-b; Rec. D0091-92.)  Mr. Nally died in the hospital of "multiple traumatic injuries." (See Cert. of Death, D0449.)

On January 4, 2006, Natalie Quigley, of Tyco's Human Resource Benefits department, submitted documents for processing plaintiff's Group Accidental Death Insurance claim to defendant LINA, with whom Tyco had contracted to provide accidental death insurance to its employees.  (Compl. ¶ 10; Pl.'s St. Mat Facts ¶¶ 6, 10-11; Def.'s St. Mat. Facts ¶ 1.)  On February 28, 2006, LINA issued a letter denying plaintiff's claim for accidental death benefits, concluding that Mr. Nally's accident was caused by a hypoglycemic episode, and thus did not fall under the policy's definition of a "covered accident."  (Letter from Marcy L. Miller, Feb. 20, 2006; see also Tyco Benefits Plan, D0012.)  On August 20, 2006, plaintiff's counsel sought an appeal of LINA's decision to deny benefits, arguing that Mr. Nally's "injuries and death were not

caused directly or indirectly by any disease or sickness, but from injuries inflicted by the collapsed roof of the [vehicle]." (Letter from Robert Angino, Plaintiff's Counsel, Aug. 20, 2006, D0076.) Following her appeal, LINA requested an independent medical review by Dr. Marta Terlecki, M.D., a board-certified specialist in Internal Medicine and Diabetes Endocrinology, (Def.'s St. Mat. Facts ¶ 20), and a review by LINA's Medical Director and Assistant Medical Director. (Def.'s St. Mat. Facts ¶¶ 20-24.) Based on their reviews, in addition a re-review of the incident reports and other supporting documents, LINA denied plaintiff's appeal by letter dated February 28, 2007. (Letter from Renee Worst, LINA Product Specialist, Feb. 28, 2008, D0044.)

Plaintiff then brought this suit under ERISA, 29 U.S.C. § 1132(a)(1)(B), seeking benefits under the plan. (Compl. ¶ 35.) This Court has jurisdiction to hear this case under 28 U.S.C. § 1331, as it presents a question arising under federal law.

## 2.   SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id. at 248.

Cross-motions for summary judgment are reviewed independently. See Startzell v. City of Philadelphia, 2007 WL 172400, at *4 (E.D. Pa. Jan. 18, 2007). The moving party in each

motion bears the initial burden of demonstrating that there is no triable issue of fact as to all the elements of any issue on which the moving party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also In re Bessman, 327 F.3d 229, 237-38 (3d Cir. 2003) (citations omitted). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party must show that "there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. After the moving party has met their burden, "the [non-moving] party's response … must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Williams v. West Chester, 891 F.2d 458, 464 (3d Cir. 1989). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Tech., Inc., 78 F. Supp. 2d 402, 407 (E.D. Pa. 2000). Rather, the non-moving party must support each essential element of its claim with specific evidence from the record. Celotex, 477 U.S. at 322. If the non-moving party fails to make a sufficient factual showing regarding the essential elements on which they bear the burden of proof at trial, summary judgment is appropriate. Id.

Evidence introduced to support or defeat a motion for summary judgment must be capable of admission at trial. Callahan v. AEV, Inc., 182 F.3d 237, 252 n.11 (3d Cir. 1999). This Court must view evidence presented on the motion in the light most favorable to the non-moving party, and make every reasonable inference in their favor. Anderson, 477 U.S. at 255; Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005) (citations omitted). Thus, summary judgment is appropriate when this Court determines that, after viewing the evidence and making all inferences in favor of the non-moving party, there is no genuine issue of material fact to warrant a trial. Celotex, 477 U.S. at 322.

3.    STANDARD FOR REVIEWING LINA'S BENEFIT DETERMINATION

Both parties agree that this action and the Group Accident Policy are governed by ERISA. (Compl. ¶ 8; Ans. ¶ 8.)  Before reviewing defendant's decision, the Court must first determine the appropriate standard of review.  Courts review a denial of ERISA benefits under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Marciniak v. Prudential Fin. Ins. Co. of America, 184 Fed. Appx. 266, 268 (3d Cir. 2006).  The Supreme Court has noted that in cases where an administrator exercises discretion, "[t]rust principles make a deferential standard of review appropriate" and suggested that courts review such exercises of discretion under the arbitrary and capricious standard.  Stratton v. E.I. Dupont De Nemours & Co., 363 F.3d 250, 254 (3d Cir. 2004) (quoting Firestone, 489 U.S. at 111-12).  Under the arbitrary and capricious standard, the district court must defer to the administrator of a benefit plan unless the administrator's decision is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan.  Abnathya v. Hoffman La-Roche, Inc., 2 F.3d 40, 41 (3d Cir. 1993).

In addressing the appropriate standard of review, the Third Circuit has held that "when an insurance company both funds and administers benefits, it is generally acting under a conflict that warrants a heightened form of the arbitrary and capricious standard of review."  Pinto v. Reliance Standard Life Insurance Co., 214 F.3d 377, 378 (3d Cir. 2000).  When applying the heightened arbitrary and capricious standard, district courts must use a "sliding scale approach,"

6

"intensifying the degree of scrutiny to match the degree of conflict." Id. at 392.  This approach allows the court to "take notice of discrete factors suggesting that a conflict may have influenced the administrator's decision," id. at 379, and should include a "broad-based inquiry into whether the structure of the plan raises concerns about the administrator's financial incentive to deny coverage properly." Post v. Hartford Ins. Co., 501 F.3d 154, 163 (3d Cir. 2007).

The factors the court must consider may be "structural" (relating to whether the plan is set up so that the administrator has strong financial incentives to deny claims) or "procedural" (relating to the process by which the administrator came to its decision). Pinto, 214 F.3d at 392-93.  The Third Circuit has listed four non-exclusive structural factors for courts to consider: "(1) the sophistication of the parties, (2) the information accessible to the beneficiary, (3) the financial arrangement between the employer and administrator, and (4) the financial status of the administrator." Post, 501 F.3d at 163 (citing Pinto, 214 F.3d at 392).  Courts also consider the administrator's claim evaluation process, according more deference to administrators that use an independent body to evaluate claims, in theory lessening the effect of any conflict. Stratton, 363 F.3d at 255.

Most recently, the Third Circuit has clarified that two aspects of a plan's financial structure should raise particular concern: (1) when a plan is funded on a case-by-case basis, and (2) when it is funded and administered by an outside insurer. Post, 501 F.3d at 163.  The latter is a concern because the courts presume that "the employer ha[s] at least some self-interest in seeing that benefits are paid fairly," whereas when a plan is funded by an outside insurer, "the employer is a step removed from the process, making it less likely to feel the full effects of employee dissatisfaction with claims handling." Id. at 163-64 (citing Pinto, 214 F.3d at 389).

7

Thus, the structure of a plan's administration alone, without inquiry into the administrator's behavior, can require heightened review, though the Third Circuit has noted that, in the past, structural factors alone have never warranted anything more than moderately heightening review. Id. at 164.  However, if a structural conflict is compounded by procedural irregularities that give the court reason to doubt the administrator's fiduciary neutrality, the court may heighten its review further in proportion to the amount of evidence of procedural bias.[2]  Id. at 165 (citing Kosiba v. Merck & Co., 384 F.3d 58, 66; Pinto, 214 F.3d at 393).

The burden of proof is on the claimant to show that a heightened standard of review is warranted in a particular case.  Schlegel v. Life Ins. Co. Of N. America, 269 F. Supp. 2d 612, 617 (E.D. Pa. 2003).  Regardless of whether a court employs the heightened or the deferential arbitrary and capricious standard of review, a court "may not substitute its judgment for that of plan administrators."  Stratton, 363 F.3d at 256.

## A.    *De Novo* or Arbitrary and Capricious Review?

Under Firestone and Pinto, this Court must first determine whether *de novo* or arbitrary and capricious review applies.  489 U.S. at 115; 214 F.3d at 383.  Defendant argues that arbitrary and capricious review is appropriate because the Group Accident Policy unambiguously grants LINA discretionary authority to determine eligibility for benefits under the Group Accident Policy.  See e.g., Def.'s Mem. in Supp. Cross-Mot. Summ. J. 3-4.  Plaintiff disagrees.  See e.g., Pl.'s Mot. Summ. J. ¶ 60.  Plaintiff argues that the summary plan description (hereinafter "SPD")

---

[2]  The Third Circuit has identified the following non-exhaustive list of procedural factors: (1) reversal of position without additional medical evidence; (2) self-serving selectivity in the use and interpretation of physician's reports; (3) disregarding staff recommendations that benefits should be awarded; and (4) requesting a medical examination when all of the evidence indicates disability.  Post, 501 F.3d at 164-65 (citing Kosiba, 384 F.3d at 67).

states, "[t]he Tyco Benefits Review Committee shall have the discretionary authority to determine eligibility for plan benefits and to construe the terms of the plan, including the making of factual determinations," (Ex. B, SPD 169), and that, therefore, this Court should find that no one had discretion to interpret the plan documents and award benefits. See Pl.'s Mot. Summ. J. ¶ 60. In support of this contention, plaintiff provides two arguments: first, she alleges that her decedent only ever read the SPD, but never had an opportunity to read the Group Accident Policy promulgated by LINA. In light of this alleged fact, plaintiff asks the Court to apply the Pennsylvania "reasonable expectations doctrine," which requires ambiguities in insurance contracts be resolved in favor of the insured. See Pl.'s Mot. Summ. J. ¶¶ 42-57; Pl.'s Br. in Supp. Mot. Summ. J. 4-5, 19-21.[3] Under the "reasonable expectations doctrine," plaintiff argues that the language of the SPD governs. Second, plaintiff argues that the SPD and the plan language conflict regarding which entity has discretion to interpret the plan; therefore, under Burnstein v. Ret. Account Plan for Employees of Allegheny Health Educ. and Research Found., 334 F.3d 365 (3d Cir. 2003), the SPD's language governs. From what this Court can discern, plaintiff argues that if the Court considers the SPD to be the only relevant plan document, the effect would be a determination not only that LINA did not have the requisite discretionary authority to warrant arbitrary and capricious review, but, in effect, no one did. Thus, plaintiff asks this Court to review LINA's denial of benefits *de novo*.       It is well established that the court examines the language of the plan itself to determine whether the plan administrators were given discretionary authority to determine eligibility for benefits. See Firestone, 489 U.S. at 115

---

[3] As precedent, plaintiff cites several Pennsylvania Supreme Court insurance contract interpretation cases, notably Rempel v. Nationwise Life Ins. Co., 471 Pa. 404 (1977) and Collister v. Nationwise Life Ins. Co., 479 Pa. 579 (1978).

("[T]he validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue."); <u>Cimino v. Reliance Standard Life Ins. Co.</u>, 2001 WL 253791, at *2 (E.D. Pa. Mar. 12, 2001).  The Group Accident Policy No. OK 826564 issued by LINA on July 1, 2002 states:

> [t]he Plan Administrator of the Employer's employee welfare
> benefit plan (the Plan) has appointed the Insurance Company as the
> plan fiduciary under federal law for the review of claims for
> benefits provided by this Policy and for deciding appeals of denied
> claims.  In this role the Insurance Company shall have the
> authority, in its discretion, to interpret the terms of the Plan
> documents, to decide questions of eligibility for coverage or
> benefits under the Plan, and to make any related findings of fact.

(LINA Group Accident Policy 20, Rec. D0020.)   The Court finds this is language to be an unambiguous grant of discretion to LINA as the plan administrator, triggering arbitrary and capricious review.  <u>See</u> <u>e.g.</u>, <u>Luby v. Teamsters Health, Welfare, and Pension Trust Funds</u>, 944 F.2d 1176, 1180 (3d Cir. 1991); <u>see also</u> <u>Abatie v. Alta Health & Life Ins. Co.</u>, 458 F.3d 955, (9th Cir. 2006) (en banc). However, the Court will address plaintiff's arguments regarding the effect of the SPD on our standard of review.

As plaintiff has vigorously argued, if the language of the SPD directly conflicts with the language in the plan that the SPD is summarizing, the SPD's language controls.  <u>Burnstein</u>, 334 F.3d at 378 (noting that the Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have adopted similar views).  In the Third Circuit, a plan participant who bases a claim for plan benefits on a conflict between an SPD and a plan document need not plead nor prove reliance on the SPD.  <u>Id.</u> at 381.  If the SPD conflicts with a plan document, then the court should read the terms of the plan documents "as superseded and modified by conflicting language in the

SPD." Id.

Defendant argues that the language of the SPD and the Group Accident Policy are not in conflict because it is not inherently contradictory for the Tyco Benefits Committee to have discretion over claims for benefits and also delegate that discretionary authority to LINA.  Def.'s Mem. 3-4; Tr. Oral Arg., 11/2/07, 24.  The Court agrees.  "Even though a contradictory SPD is controlling over actual plan language, an SPD is, by its nature, a summary, and cannot include all the terms contained in the full plan."  Kelly v. Ret. Pension Plan for Certain Home Office, 73 Fed. Appx. 543, 547 (3d Cir. 2003).  As in Kelly, we find that the Group Accident Policy's language granting discretionary authority to LINA "do[es] not contradict the language of the SPD, [but] instead expand[s] upon the language to give a more complete definition" of the allocation of discretionary authority to the plan's fiduciaries.  Id.[4]  This Court's finding is in accord with the First, Second, Fourth, Eighth, Ninth, and Eleventh Circuits' holdings on this precise issue.  See Tocker v. Philip Morris Cos., Inc., 470 F.3d 481 (2d Cir. 2006); Fenton v. John Hancock Mut. Life Ins. Co., 400 F.3d 83, 90 (1st Cir. 2005) ("The silence of the summary plan description on the issue of the administrator's discretion does not create a direct conflict with any particular Plan provision and therefore does not warrant de novo review."); Martin v. Blue Cross & Blue Shield of Va., Inc., 115 F.3d 1201, 1205 (4th Cir. 1997) ("Vesting the plan administrator with discretion in making coverage decisions simply does not conflict with the

---

[4]  In Kelly, claimant-appellant challenged the Opinion and Order of the district court finding that he was not entitled to pension credit for the years 1981 through 1988.  73 Fed. Appx. at 547.  Appellant argued that under the SPD he should receive pension credit, and that the SPD and the plan documents conflicted.  Id.  The Third Circuit found that the language of the plan documents did not conflict with the SPD, but merely expanded on the language of the SPD to give a more complete definition of who was a "covered employee."  Id.

SPD's silence on the matter."); <u>Cagle v. Brunner</u>, 112 F.3d 1510 (11th Cir. 1997); <u>Wald v. Southwestern Bell Corp.</u>, 83 F.3d 1002 (8th Cir. 1996); <u>Atwood v. Newmont Gold Co.</u>, 45 F.3d 1317 (9th Cir. 1995), <u>overruled on other grounds by</u> <u>Abatie v. Alta Health & Life Ins. Co.</u>, 458 F.3d 555 (9th Cir. 2006).

To the extent plaintiff's "reasonable expectations" argument is intended assert a rationale for *de novo* review based on the above-quoted SPD language, the Court finds that, standing alone, the SPD itself contains an unambiguous grant of discretion to the Tyco Benefits Committee to interpret the plan's language and determine benefits, though it permissibly omits Tyco's delegation of that discretionary authority to LINA.  <u>See</u> <u>Atwood</u>, 45 F.3d at 1321-22. Assuming *arguendo* that the Court, pursuant to <u>Burnstein</u>, were to read the above-quoted portion of the plan documents as "superseded and modified" by the alleged "conflicting" language in the SPD as plaintiff suggests, the Court's standard of review would **still** be a form of arbitrary and capricious review because the SPD contains an unambiguous grant of discretion to **some** fiduciary body to interpret plan language and award benefits, as plaintiff admits.  <u>See</u> Pl.'s Mot. Summ. J. ¶ 60 ("The SPD provides discretionary authority to the Tyco[] Benefits Review committee . . . .").  As previously stated, the Court's determination whether to apply *de novo* or arbitrary and capricious review under ERISA hinges on a plan's grant of discretion, and we find no precedent that supports plaintiff's argument that the specific body in which that discretion is vested is relevant to that determination. <u>See</u> <u>supra</u> <u>Firestone</u>, 489 U.S. at 115; <u>Tocker</u>, 470 F.3d at 489 ("[Plaintiff] knew that [defendant] reserved the right to 'change, modify, or discontinue . . . without notice' the benefits explained in the [SPD], and he cannot claim to have been prejudiced by the SPD's omission of the clearer grant of discretionary authority which was contained in the .

. . Plan."); <u>Luby</u>, 944 F.2d at 1180; <u>Curcio v. John Hancock Mutual Life Ins. Co.</u>, 33 F.3d 226, 233 (3d Cir. 1994) ("the linchpin of fiduciary status under ERISA is discretion.").

ERISA's provision governing summary plan descriptions states, in pertinent part: "[a] summary plan description of any employee benefit plan . . . shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." <u>Burnstein</u>, 334 F.3d at 378-79 (quoting 29 U.S.C. § 1022).  Without delving into the instant applicability or appropriateness of Pennsylvania's "reasonable expectations doctrine," <u>see</u> <u>infra</u>, the Congressional intent behind ERISA's SPD regulations does relate broadly to employees' "expectations" in the sense that it is "the document to which the lay employee is likely to refer in obtaining information about the plan and in making decisions affected by the terms of the plan," and thus the SPD should be a "transparent, accurate, and comprehensive" summation of the plan document.  <u>Id.</u>  Here, were plaintiff to refer to the SPD for the unlikely purpose of determining the standard of review a federal district court might utilize in a review of a denial of benefits under this Group Accident Policy, as previously explained, the SPD would not lead her astray.  For all the foregoing reasons, we reject plaintiff's arguments that <i>de novo</i> review applies, and apply arbitrary and capricious review.

### B.   Degree of Heightened Review?

Next the Court must examine whether any structural conflicts of interest or procedural irregularities exist that merit our heightening our review on the "sliding scale."  <u>See</u> <u>Pinto</u>, 214 F.3d at 378, 390-94; <u>Post</u>, 501 F.3d at 162-5.  As previously stated, plaintiff bears the burden of proving that a heightened standard of review is warranted.  <u>Schlegel</u>, 269 F. Supp. 2d at 617.

13

The parties also do not dispute that a structural conflict of interest exists because LINA both administers and funds the Group Accident Policy, warranting a moderately heightened standard of review under Pinto and Post.  See Post, 501 F.3d at 164; Pl.'s Br. Re. Post v. Hartford Ins. Co. 4; Def.'s Mem. Re. Post v. Hartford. Ins. Co. 3; Tr. Oral Arg., 11/2/07, 27.  Plaintiff does not raise any additional structural challenges.

However, plaintiff claims that procedural irregularities existed in LINA's procedure of reviewing her claim for death benefits, including a "decision to deny the Nally claim from the outset," and a "limited . . . [and] biased approach to the investigation."  See Pl.'s Br. Re. Post 5. Plaintiff points to two alleged indicators of procedural irregularities.  First, plaintiff cites one of LINA's internal documents filed at the time LINA acknowledged receipt of plaintiff's claim for benefits, which states,

> 01/09/2006 claim for AD&D received in FCO.  Death certificate states that Dennis Nally died from multiple traumatic injuries as a result of an auto accident on December 8 [sic], 2005.  **Policy states that benefits will not be paid for loss which results directly or indirectly, in whole or in part, is caused by or results sickness disease or bodily or mental infirmity**.

Pl.'s Mot. Summ. J. ¶¶ 13-14 (citing Rec. D0036) (emphasis added).  From this single passage, plaintiff asks the Court to conclude that LINA "determined from the outset without any investigation that it was going to assert a defense based upon a loss caused by or resulting from sickness, disease, or bodily injury or mental infirmity."  Id. ¶ 14.  Because plaintiff has shown no evidence whatsoever to support her speculative extrapolation from this passage, we do not find that this reiteration of LINA's policy proves any procedural irregularity.

Second, plaintiff asserts that a procedural irregularity exists because LINA obtained an

14

outside medical consultation from Dr. Marta Terlecki after plaintiff's appeal of her denial of benefits, but attempted to hide Dr. Terlecki's findings from the plaintiff,[5] as evidenced by 1) LINA's failure to mention Dr. Terlecki's report in the denial of appeal and 2) counsel's failure to produce Dr. Terlecki's report until discovery pursuant to plaintiff's federal lawsuit.  Pl.'s Mot. Summ J. 36-38; Pl.'s Mem. Re. Post 2, 6; Tr. Oral Arg., 11/2/07, 42-43.  The Court finds this argument to be without any factual or legal basis.  First, independent claim evaluation is actually a mitigating factor that lowers the standard of review on the "sliding scale."  Post, 501 F.3d at 163 (citing Stratton, 363 F.3d at 255).  Second, LINA's February 28, 2007 letter directly to plaintiff's counsel denying plaintiff's appeal states, "[i]n order to ensure the appropriate interpretation and clarification of the testing on file, the evidence was forwarded for an independent medical review.  This review was completed by a [p]hysician who is board certified in Internal Medicine and Diabetes Endocrinology.  The information was also reviewed by a Medical Director."  Letter from Renee Worst, LINA, Feb. 28, 2007, Rec. D0045.  The letter clearly refers to Dr. Terlecki's review, if not by name.  Defendant asserts that, at the time of the appeal, plaintiff never requested a copy of the review mentioned in this letter, and plaintiff has not come forward with any evidence to rebut that assertion.  See Def.'s Mem. Re. Post 6.  Third, even if plaintiff were to come forward with evidence that defendant had belatedly produced Dr. Terlecki's report during discovery, that fact would have no bearing on the internal procedure by which LINA denied plaintiff's claim for benefits months earlier, but only on a motion for discovery sanctions, which plaintiff never filed.  Thus, the Court does not find that LINA's

---

[5]  Pertinently, to plaintiff, Dr. Terlecki's statement that "it cannot be determined whether patient was hypoglycemic" at the exact time of the accident.

actions with regard to Dr. Terlecki's report are procedural "final nail[s]," as plaintiff asserts.  Tr. Oral Arg., 11/2/07, 42.  In sum, we do not find that plaintiff has produced sufficient evidence to heighten our review beyond the moderately heightened review required by the structural conflict of interest created because LINA both administers and funds the Group Accident Policy.  See Post, 501 F.3d at 164.  The Court will now evaluate LINA's denial of benefits according to a moderately heightened arbitrary and capricious review.


**6.      REVIEW OF LINA'S DENIAL OF BENEFITS**

First the Court will consider the reasons offered by LINA to justify its decision to deny benefits based on the evidentiary record in this case.[6]  LINA's letters to plaintiff and plaintiff's counsel reflect that LINA measured the evidence of record against the policy's "Common Exclusions" provision, which states:

> [i]n addition to any benefit specific exclusions, benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any of the following, unless coverage is specifically provided for by name in the Description of Benefits Section:
> 6.  Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof . . . ."

See Rec. D0018, D0043.  The policy defines a "Covered Accident," in pertinent part, as:

> A sudden, unforeseeable, external event that results, directly and

---

[6]  "Under the arbitrary and capricious standard of review, the 'whole' record consists of that evidence that was before the administrator when he made the decision being reviewed."  Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997).  Plaintiff submitted medical records obtained after this lawsuit was filed, see Def. Mem. In Opp. 12-13, which, accordingly, cannot be considered by the Court.

independently of all other causes, in a Covered Injury[7] or Covered Loss[8] and meets all of the following conditions:

    1.  occurs while the Covered Person is insured under this policy;

    2.  is not contributed to by disease;

    3.  is not otherwise excluded under the terms of this Policy.

<u>See</u> Rec. D0012, D0043.[9]

    With regard to such restrictive clauses in ERISA plans, the Third Circuit has held:

> [w]here an insurance policy contains a clause providing recovery for fatal injuries "caused solely through violent external and accidental means," then there may be recovery on the policy if the accident was the predominant or proximate cause of death . . . However, if the policy contains an additional clause precluding recovery if the death was caused directly or indirectly by disease, **there can be no recovery if pre-existing disease contributed to the death**.

<u>Shiffler v. Equitable Life Assurance Soc'y of the United States</u>, 838 F.2d 78, 84 (3d Cir. 1988)

(emphasis added); <u>see also</u> <u>Pirkheim v. First Unum Life Ins. Co.</u>, 229 F.3d 1008, 1010-1011

(10th Cir. 2000) (holding that policy language providing that "the loss must result directly and

independently of all other causes from accidental bodily injury" precluded recovery where the

plaintiff could not establish that their decedent's death occurred independently of all other

---

    [7] LINA's policy defines "Covered Injury" as "[a]ny bodily harm that results directly and independently of all other causes from a Covered Accident." <u>See</u> Rec. D0012.

    [8] LINA's policy defines "Covered Loss" as "[a] loss that is . . . the result, directly and independently of all other causes, of a Covered Accident." <u>See</u> <u>id.</u>

    [9] Similarly, the SPD section regarding accidental death and disability insurance includes a provision entitled "What the AD&D Plan Does Not Cover," and states, "[c]ertain losses are not covered by the AD&D plan, including, but not limited to, losses caused or resulting from . . . disease of any kind . . . [and] [a]ny loss not specifically covered as a loss under the plan." <u>See</u> Ex. B, SPD, 120.

causes).[10]

LINA determined in this instance that Mr. Nally's diabetes-related hypoglycemia caused

his accident.  LINA's February 28, 2007 letter lists the documents it reviewed in making that

determination:

> Tyco International Group Accident Policy, OK 826464; Proof of
> Loss claim form; Death Certificate; Medical Records from
> Lancaster General Hospital; Police incident report; Denial letter
> dated February 20, 2006; Letter from Tyco electronics dated
> December 12, 2005; Pictures of Mr. Nally's car after the car crash;
> Newspaper article regarding Dennis Nally's car crash; Internet
> articles from the Insurance Institute for Highway Safety; CDR File
> Information; Independent Medical Record Review completed by a
> Physician who is Board Certified [in] Internal Medicine/Diabetes
> Endocrinology.

See Rec. D0044.  LINA reviewed these documents twice (pursuant to her original claim and her

appeal), and pointed to the facts formerly set forth in this opinion, see supra, which include:

(1) Ms. Nally's confirmation that Mr. Nally was an insulin dependent diabetic;

(2) police interviews with witnesses stating that Mr. Nally was driving erratically, "weaving

on and off the road surface until he lost control of the vehicle," as well as Ms. Nally's

---

[10] Plaintiff also vigorously argues that the policy language regarding causation is ambiguous, requiring that the Court undertake an interpretation of the language of the policy according to Pennsylvania state contract law.  See Pl.'s Mot. Summ. J. ¶¶ 42-48, 56; Pl.'s Mem. 4-5.  The Court need not reach the issue of contract interpretation, because it is satisfied that the language set forth in the LINA policy is not ambiguous.  See Dixon v. Life Ins. Co. N. Am., 389 F.3d 1179, 1183-84 (11 Cir. 2004) (discussing the Fourth, Sixth, Ninth, and Tenth Circuits holdings on the unambiguousness of the words "directly and independently of all other causes" in ERISA plans); see also Senkier v. Hartford Life & Accident Ins. Co., 948 F.2d 1050 (7 Cir. 1991) (Posner, J.).  When the language of an ERISA plan is unambiguous, a court may not rewrite its terms.  Early v. United States Life Ins. Co., 222 Fed. Appx. 149, 153 (3d Cir. 2007); Henglein v. Colt Indus. Operating Corp., 260 F.3d 201, 215 (3d Cir. 2001), cert. denied, 535 U.S. 955 (2002); Bill Gray Enters., Inc. Employee Health & Welfare Plan v. Gourley, 248 F.3d 206, 220 n.13 (3d Cir. 2001) ("straightforward language in an ERISA plan document should be given its natural meaning.") (internal quotations and citations omitted).

statement that Mr. Nally had no reason to speed that day and was normally a cautious driver;

(3) police documentation that the road was clear and dry, and there were no other vehicles involved;

(4) the report obtained from the vehicle's reporter, indicating that Mr. Nally was traveling at 92 m.p.h. and there was no braking prior to the crash;

(5) medical records indicating that at the time he was removed from the vehicle, Mr. Nally was unconscious, his blood sugar was around "37," and he was given an ample of glucose in the field without any major effect on his mental status;

(6) Mr. Nally's blood was found free of alcohol and drugs; and

(7) trauma unit documents stating Mr. Nally was "hypoglycemic in the field."

See Rec. D0044-45, D0055.  In addition, LINA considered Dr. Terlecki's independent medical review, which reports that an individual with a glucose reading of 37 would be incapable of safely operating a motor vehicle, and that "[m]ost patients with blood sugars of less than 40 would have cognitive impairment."  See Rec. D0054-57.

On the basis of this record, we cannot find that "[d]efendant had no basis to conclude that Mr. Nally was hypoglycemic at the time of his car crash," as plaintiff contends.  See Pl.'s Mot. Summ. J. ¶¶ 58-59; Pl.'s Res. 6.  Plaintiff points to Dr. Terlecki's report, which states that because the paramedics could not check Mr. Nally's blood glucose levels until forty-one (41) minutes after the accident, "it can not be determined whether the patient was hypoglycemic at the time of the incident."  See, e.g., Pl.'s Res. 5-6; Rec. D0056.  After reviewing the report in its entirety, the Court finds that it does not, as plaintiff contends, establish that there is no medical basis whatsoever for concluding that Mr. Nally's diabetes caused the crash, but merely that Mr.

Nally's blood glucose levels at the precise time of the accident cannot be determined with absolute certainty.  Contrary to plaintiff's assertion, Dr. Terlecki's report does establish a basis in the record to link hypoglycemia and significant cognitive impairment.  <u>See</u> Pl.'s Res. 6-7; Rec. D0055.

In her briefs, plaintiff suggests a host of alternative reasons for Mr. Nally's behavior and accident, including possible side-effects of medication, recklessness, falling asleep, inadvertence, or "dozens of other possible explanations."  <u>See</u> Pl.'s Mot. Summ. J. ¶ 58; Pl.'s Mem. 5. However, plaintiff has not presented the Court with any evidence of record either to prove the reasonableness of these alternatives or to rebut LINA's finding that Mr. Nally's accident was caused by hypoglycemia.  Plaintiff argues only that the evidence of record does not establish the veracity of LINA's conclusion with absolute certainty, a degree of certainty that is not required to show reasonableness under the heightened form of the arbitrary and capricious standard.  <u>See</u>, <u>e.g.</u>, <u>Cimino</u>, 2001 WL 253791, *6.

Thus, having reviewed the evidentiary record and the reasons proffered by LINA, the Court concludes that a reasonable fact-finder could not find that LINA's decision to deny plaintiff's claim for accidental death benefits was unreasonable, unsupported by the evidence, erroneous as a matter of law, nor was it irrational, arbitrary, or capricious.  <u>See</u> <u>id.</u>  Accordingly, the Court concludes that there is no genuine issue of material fact as to whether LINA was unreasonable in its conclusion that the evidence was sufficient to support a finding that Mr. Nally's accident was caused by his diabetes within the definition of the plan.

## 7.   ATTORNEY'S FEES

Plaintiff has requested attorney's fees in this case.  Pl.'s Mot. Summ. J. ¶¶ 70-72, 74.

Section 502(g)(1) of the ERISA statute provides for the discretionary award of attorney's fees

and costs.  29 U.S.C. § 1132(g)(1).  The court considers the following five factors, first

announced in Ursic v. Bethlehem Mines, 719 F.2d 670 (3d Cir. 1983), when awarding fees:

> (1) the offending parties' culpability or bad faith;
> (2) the ability of the offending parties to satisfy an award of
> attorney's fees;
> (3) the deterrent effect of an award of attorney's fees against the
> offending parties;
> (4) the benefit conferred on members of the . . . plan as a whole;
> and
> (5) the relative merits of the parties' position.

Ursic, 719 F.2d at 673; see also Music v. Prudential Ins. Co. Am., 2007 U.S. Dist. LEXIS 77771,

at *3 (M.D.Pa. Oct. 19, 2007).  Because the Court finds none of the above factors to have been

satisfied in this case, the Court declines, in its discretion, to award attorney's fees and costs.

An appropriate Order follows.

21